UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------
In re

    KELLY J. CHAFFEE,                      13-10086 B

                                Debtor                            DECISION & ORDER
-------------------------------------------------

                          Dennis C. Gaughan, Esq.
                          6161 South Park Avenue
                          Hamburg, New York 14075
                          Attorney for the Debtor

                          McCabe, Weisberg and Conway, PC
                          Charles Higgs, Esq., of counsel
                          145 Huguenot Street, 210
                          New Rochelle, New York 10801
                          Attorneys for HSBC

                          Albert J.    Mogavero, Esq.
                          110 Pearl Street, 6th Floor
                          Buffalo, New York 14202
                          Chapter 13 Trustee

Bucki, Chief U.S.B.J., W.D.N.Y.

       The debtor in this Chapter 13 proceeding has objected to the amount of arrears that a mortgagee has claimed as due in its proof of claim. The central issue is whether a "simple daily interest" method of calculation violates the limitations on late charges in section 254-b of the New York Real Property Law.

       Kelly J. Chaffee filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 14, 2013. The debtor concedes that at the time of filing, she had defaulted in making various payments owing to Beneficial Homeowner Service Corporation on a note that was secured by a mortgage on her residence in the Town of Hinsdale, New York. Consequently, the debtor proposed a plan that would require regular payments to a trustee in an amount sufficient to cure these accumulated mortgage arrears and to effect a distribution to other secured and unsecured creditors. Meanwhile, the plan further contemplated that Chaffee would resume direct payment of obligations that would became due post-petition under the note that she had given to Beneficial.

       On April 9, 2013, Beneficial Homeowner Service Corporation filed a proof of secured claim which asserted that the debtor owed a principal obligation of $24,842.64, together with outstanding pre-petition interest in the amount of $7,450.97. The claim further stated that the same sum of $7,450.97 was the amount needed to cure the debtor's default as of the petition date. Then on April 23, 2013, the debtor duly served the present objection to the claim. In her objection,

Chaffee contends that she had defaulted in making only six pre-petition payments, and that her arrears totaled only $1,964.81 as of the date of bankruptcy filing. When Beneficial failed to respond to the objection, this court sustained the debtor's position and granted an order setting arrears in the amount that the debtor had proposed. Meanwhile, however, at a time subsequent to the debtor's service of the objection, Beneficial transferred its claim to Springcastle American Funding Trust. As servicing agent for Springcastle, HSBC then filed a motion for reconsideration of the order setting the amount of arrears.

Section 502(j) of the Bankruptcy Code provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause," and that "[a] reconsidered claim may be allowed or disallowed according to the equities of the case." In the present instance, reconsideration of the claim will not unduly prejudice the debtor. HSBC filed its motion for reconsideration prior to confirmation of the debtor's Chapter 13 plan. Consequently, when the plan was confirmed on January 30, 2014, this court assessed feasibility with a recognition of the possibility that the claim of Springcastle might be allowed for the amount that Beneficial had originally asserted. On the other hand, by seeking to revisit this court's prior order, HSBC opens the door to a fresh review of the entire claim. For these reasons, the court grants the request for reconsideration, but upon reconsideration will reassess all aspects of the creditor's entitlement.

Discussion

On July 10, 2002, Kelly J. Chaffee borrowed the sum of $34,700.09 from Beneficial Homeowner Service Corporation. Pursuant to a Loan Repayment and Security Agreement, Chaffee agreed to repay the principal with interest at the contract rate under terms discussed in the following paragraph:

> PAYMENT. In return for this loan, you agree to pay us the Principal . . . plus Interest in monthly payments as stated on page one, computed by the simple interest method on the unpaid balances of Principal at the Contract Rate (shown on page one) plus any monthly insurance premium, if elected, until fully paid. Payments are applied in the following order: late charges, interest at the Contract Rate for the actual time outstanding, principal, and insurance. For any past due amounts, payments will be applied to the most delinquent monthly installment first, in the same order shown above, until all past due monthly installments are paid in full.

The referenced statement on page one indicates a contract interest rate of 16.496%, a repayment term of 180 months, and monthly payments of $521.69. This sum represents the exact amount needed to amortize the original obligation at the stated rate of interest over the loan's term. Elsewhere in the agreement, the borrower promised that she would "also pay 2% of the unpaid amount" of any payment that she failed to pay "in full within 15 days after it's due."

HSBC directs the court's attention to the language authorizing it to collect interest "computed by the simple interest method on the unpaid balances of Principal at the Contract Rate." In its view, this text allows the lender to charge interest on the unpaid principal for every day prior to receipt of payment. HSBC contends that when payment is delayed from the due date, additional interest accrues daily on the unpaid principal. Later, when payment is received, the servicer will apply that payment first to the increased amount of accumulated interest. This application then has the exacerbating effect of lessening the anticipated reduction of principal, so that even more interest will accrue on the current principal balance. Thus, delay in payment will negate the accuracy of any amortization that the parties may have originally anticipated. To address this inaccuracy, HSBC has included additional deferred interest into its proof of claim.

The debtor argues that the loan agreements compel the lender to honor the schedule of fully amortizing payments. Under this interpretation, each payment would be deemed to satisfy the oldest outstanding monthly obligation. Late charges would accrue on any payment made more than fifteen days after its due date, but payments would otherwise fulfill the obligation for repayment of principal and interest.

As between the methodologies suggested by borrower and lender, the difference in outcome is dramatic. Calculations are here somewhat complicated by the fact that the lender and Chaffee agreed to an interest rate modification during the course of the loan. Nonetheless, the parties concede that Chaffee defaulted in making six monthly payments totaling $1,565.10. Even if every payment through the date of bankruptcy filing was delinquent by more than 15 days, late charges of two percent would have accumulated to $1,100.56. Thus, under the approach suggested by the debtor, the total arrears as of the date of bankruptcy filing could total no more than $2,665.66. In contrast, HSBC advocates a "simple daily interest" approach that yields arrears in the amount of $7,450.97.[1]

In its approach to calculating arrears, the mortgage servicer relies upon that portion of the Loan Repayment and Security Agreement which states that interest is "computed by the simple interest method on the unpaid balances of Principal at the Contract Rate." However, this interpretation overlooks the further requirement that Chaffee was "to pay us the Principal . . . plus Interest *in monthly payments* as stated on page one" (emphasis added). Because the loan agreement mandated that the debtor make specific monthly payments, those monthly payments are subject to the requirements of New York Real Property Law § 254-b(1).

Section 254-b(1) of the Real Property Law states in relevant part as follows:
> If a bond or note, or the mortgage on real property, heretofore or hereafter made, improved by a one to six family residence occupied by the owner, securing the payment of same, . . . contains a provision whereby the mortgagee or lender retains the right to collect a late charge on any instalment which has become due and remains unpaid, such charge on any such delinquent instalment, regardless of the period it remains in default, shall not exceed and shall only be enforced to the extent of two percent of such delinquent instalment; provided, however, that no charge shall be imposed on any instalment paid within fifteen days after the due date. No such late charge shall be deducted from any regular instalment payment by the mortgagor or borrower, but shall be separately charged and collected by the mortgagee or lender. In the absence of a specific provision in a bond, note or mortgage no late charge on any delinquent instalment shall be assessed or collected. The term "instalment" shall include amounts representing

---

[1] As an additional illustration of the dramatic difference in result, let us suppose that the debtor had failed only to make her initial monthly payment, but thereafter made the prescribed payment on each of the subsequent dates on which a payment was due. Let us also assume the same interest rate and monthly payment as stated in the Loan Repayment and Security Agreement. Essentially, each payment would have been late by one month. Under the debtor's interpretation of the loan agreement, upon completing the 180th payment, the borrower would owe late charges totaling $1,877.40, but would otherwise discharge her obligation. Under the simple daily interest approach, accrued interest would constantly absorb each monthly payment. Consequently, the debtor would have effected no reduction of principal, and with interest and late charges would owe a balance greater than the amount that she had originally borrowed. In their brief, the attorneys for HSBC represent that although the loan documents would have allowed this outcome, the lender "voluntarily . . . advanced the payment due date on each occasion when it received funds" and instead treated the additional interest as a "deferred" obligation. In any event, as evidenced by the amount of its claim, even this modified approach would result in significantly greater arrears than would derive from use of the amortization schedule with a late charge capped at the statutory rate of two percent.

> interest, amortization of principal and payments in respect of insurance premiums, taxes and utility charges if the bond, note or mortgage provides for collection thereof by the mortgagee.

Pursuant to the second last sentence of section 254-b(1), in the absence of a specific provision within the loan documents, "no late charge on any delinquent instalment shall be assessed the delinquent instalment, without regard to the length of time that an obligation remains in default.

In the present instance, the loan agreement required that the debtor make monthly instalments on account of moneys due for interest and the amortization of principal. Consequently, the lender could impose additional charges in excess of the instalment amounts only if those charges did not exceed two percent of the prescribed payment. Notably, the loan agreement contains such a late charge provision. Rather than limiting its collection to the prescribed instalment plus a two percent late charge, the lender here asserts the further right to simple daily interest calculated without regard to any fixed schedule of amortizing payments. Except in that circumstance where a borrower consistently makes payment on or before the monthly due date, this approach will involve the collection of additional interest. Resulting from any tardy payment of a regular monthly instalment, such interest is a charge that violates New York Real Property Law §254-b in at least three respects. Because the loan documents already impose a late charge, any additional interest would constitute a charge that exceeds the statutory limit of two percent. Second, the additional interest is collected even when a scheduled instalment is paid within fifteen days of the due date. Third, the additional interest is calculated in an amount not fixed, but contingent on the period of delinquency.

But for the limitations of state law, a lender could construct a loan agreement that would allow the collection of simple daily interest, so that the amount of total remittance would depend upon the date of receipt of payment. Indeed, the prohibitions of Real Property Law §254-b would not apply to mortgages on property other than "a one to six family residence occupied by the owner." We believe, however, that the courts of New York would hold that this statute applies in the present instance to prohibit a recovery of additional interest in excess of regular instalments plus a fixed late charge of two percent of any payment delinquent by more than 15 days.

Kelly Chaffee concedes that when she filed her bankruptcy petition, she was delinquent in the payment of the prior six months of instalments due under her loan agreement. HSBC has submitted a payment ledger which indicates that by reason of an adjustment in interest rates, the monthly obligation for principal repayment and interest is now set at $260.85. Accordingly, six months of arrears and late charges of two percent would total $1,596.42. Unfortunately, the record does not preclude the possibility that Chaffee might still owe late charges with respect to instalments that she has already paid. For this reason, the mortgagee is granted leave to file an amended claim that would incorporate any such late charges. In all other respects, the outstanding loan obligation shall be calculated in a manner that is consistent with this opinion. For now, the court will sustain the debtor's claim objection, to the effect that the arrearage claim of Springcastle American Funding Trust is disallowed for any sum in excess of $1,596.42.

So ordered.

Dated:   Buffalo, New York            /s/         CARL L.   BUCKI
         July 1, 2014            Hon.   Carl L.   Bucki, Chief U.S.B.J., W.D.N.Y.